J-S35034-20

2020 PA Super 234

| | | |
|---|---|---|
| ALEX ANTHONY PINEDA, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES L. PERRY, ANDREA L. PERRY, | : | |
| G. PHILLIP BRADY, DEBORAH | : | |
| BRADY, ROXANNE ROBERTO AND | : | No. 3473 EDA 2019 |
| SHARON PERRY | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: JAMES L. PERRY, | : | |
| ANDREA L. PERRY AND SHARON | : | |
| PERRY | : | |

Appeal from the Order Entered November 15, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2019-12356

| | | |
|---|---|---|
| ALEX ANTHONY PINEDA, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES L. PERRY, ANDREA L. PERRY, | : | |
| G. PHILLIP BRADY, DEBORAH | : | |
| BRADY, ROXANNE ROBERTO AND | : | No. 3474 EDA 2019 |
| SHARON PERRY | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: JAMES L. PERRY, | : | |
| ANDREA L. PERRY AND SHARON | : | |
| PERRY | : | |

Appeal from the Order Entered December 4, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2019-12356

| | | |
|---|---|---|
| ALEX ANTHONY PINEDA, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |

|  | : |  |
| --- | --- | --- |
|  | : |  |
| JAMES L. PERRY, ANDREA L. PERRY, | : |  |
| G. PHILLIP BRADY, DEBORAH | : |  |
| BRADY, ROXANNE ROBERTO AND | : | No. 3475 EDA 2019 |
| SHARON PERRY | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
| APPEAL OF: G. PHILIP BRADY AND | : |  |
| DEBORAH BRADY | : |  |

Appeal from the Order Entered November 15, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2019-12356

| ALEX ANTHONY PINEDA, JR. | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
|  | : | PENNSYLVANIA |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| JAMES L. PERRY, ANDREA L. PERRY, | : |  |
| G. PHILLIP BRADY, DEBORAH | : |  |
| BRADY, ROXANNE ROBERTO AND | : | No. 3476 EDA 2019 |
| SHARON PERRY | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
| APPEAL OF: G. PHILIP BRADY AND | : |  |
| DEBORAH BRADY | : |  |

Appeal from the Order Entered December 4, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2019-12356

BEFORE:   BOWES, J., STABILE, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                    Filed: September 24, 2020

Appellants, James Perry, Andrea Perry, Sharon Perry, G. Philip Brady,

and Deborah Brady, appeal from the order dated November 15, 2019, and

---

[*] Retired Senior Judge assigned to the Superior Court.

amended on December 4, 2019, permanently enjoining them from denying Appellee, Alex Anthony Pineda, Jr., access to the rear of his property located in King of Prussia, Montgomery County. We affirm and lift the stay and suspension of the permanent injunction.

Preliminarily, for the convenience of the reader, we wish briefly to clarify the people and locations involved in this action:

- Stephen O'Leary recorded the original subdivision plan encompassing the parties' properties in the office of the Montgomery County Recorder of Deeds on May 5, 1923 ("**the O'Leary Plan**");

- Appellee, **Alex Anthony Pineda, Jr.**, owns the property located at 433 Church Street in King of Prussia ("the Pineda Property"); on the O'Leary Plan, the Pineda Property was designated as Lot 2 in Section D; Pineda purchased the Pineda Property from **Gerald C. Strouse** on June 3, 2016;

- Appellants **James and Andrea Perry** own the property located at 431 Church Street in King of Prussia ("the Perry Property"); their predecessors in title were Salvatore and Mary Perry; James and Andrea Perry's daughter, **Sharon Perry**, lives at the Perry Property; hereinafter, James, Andrea, and Sharon Perry are collectively referred to as "the Perrys"; on the O'Leary Plan, the Perry Property was designated as Lot 1 in Section D;

- Appellants **G. Philip and Deborah Brady** ("the Bradys") own the property located at 217 Walnut Street in King of Prussia ("the Brady Property"); on the O'Leary Plan, the Brady Property was designated as Lots 3, 4, 5, 6, and 7 in Section D;

- **Roxanne Roberto** owns the property located at 211 Walnut Street in King of Prussia ("the Roberto Property"); on the O'Leary Plan, the Roberto Property was designated as Lots 47 and 48 in Section A; Roberto was a defendant in the underlying action but is not an appellant in this appeal;

- **Glenn R. and Patricia F. Kerwin** ("the Kerwins") own the property located at 414 Church Street in King of Prussia ("the Kerwin Property"); they were not named as parties in the underlying action; the Kerwin Property was not included in the O'Leary Plan;

- 3 -

- **Coates Alley** is a 20-foot wide street to the rear of the Perry Property and the Pineda Property and in between the Brady Property and the Roberto Property; it runs perpendicular to Walnut Street and parallel to Church Street; on the O'Leary Plan, Coates Alley is marked and noted "to be always open"; Coates Alley is the only access to the rear of the Pineda Property; and

- **King Alley** a/k/a Kings Alley a/k/a King's Alley[1] is a way between the Perry Property and the Kerwin Property, connecting Church Street and Coates Alley, running perpendicular to both; it runs parallel to Walnut Street; on the O'Leary Plan, King Alley is marked and designated "to be always open."

\*     \*     \*

In a 1968 quiet title lawsuit in Montgomery County Court of Common Pleas [between the then-owners of the Brady Property and the then-owners of the Roberto Property], Judge Robert Honeyman[] ruled that Coates Alley was to be mutually used and enjoyed by the parties to that lawsuit **as well as all other property owners in the subdivision whose lots were originally conveyed through the O'Leary [P]lan**. Judge Honeyman ruled that under the original grant by Stephen O'Leary, an easement arose that was to be used and enjoyed by both the parties, **as well as the other property owners whose lots were conveyed in accordance with the original plan.** Based upon his findings as to the intent of the original grantor, Judge Honeyman ruled that the alley should be kept open, that all the parties have the right to use Coates Alley, that neither party should interfere with ingress or egress to the alley, and that any obstructions to the use of the alley must be removed. ***See*** [***Z***]***oltowski v. Roberto***, MCCP 68-6542, Order dated April 2, 1969, attached as Exhibit G to [Pineda]'s Petition for Preliminary and Permanent Injunction.

Trial Court Opinion, dated December 20, 2019, at 3 (emphasis added).

The current action commenced on May 13, 2019, when Pineda filed a complaint and a petition for preliminary and permanent injunction ("the

---

[1] As the O'Leary Plan and the majority of references throughout the myriad of documents in his action use "King Alley" instead of "Kings Alley" or "King's Alley," we have elected to employ this spelling throughout our decision.

- 4 -

Petition") against the Bradys, the Perrys, and Roberto. On June 7, 2019, the Perrys filed their answer to the complaint. On June 17, 2019, the Bradys filed their answer to the complaint with new matter and counterclaims.

According to Pineda's pleadings, he was able to use Coates Alley to access the rear of the Pineda Property at the time he purchased it in 2016 and that access in both directions has since been blocked by the Bradys, the Perrys, and Roberto. Complaint, 5/13/2019, at ¶ 13.

Pineda specifically asserts that, subsequent to his purchase of the Pineda Property, the Bradys and Roberto erected a six-foot high, ten-foot wide fence across Coates Alley, which blocks his access to the Pineda Property from Walnut Street and posted a sign stating, "stop, do not enter, private property." *Id.* at ¶¶ 16, 19. The Bradys concede these facts, *see* The Bradys' Answer to Complaint with New Matter and Counterclaim, 6/17/2019, at ¶¶ 16, 19, but add that the sign was erected prior to Pineda's purchase of the Pineda Property, *id.* at ¶ 19, and that Pineda never had a right-of-way to this section of Coates Alley for two reasons:

> [(1)] Lots 1 through 7 of Section D of the O'Leary Plan were sold by Stephen O' Leary and Jennie O' Leary to George Dillon in 1923 (the "Dillon Deed")[2] which extinguished any alleged easement or right of way over the area of land that was designated as Coates Alley over Lots 1 through 7 of [Section] D in the O'Leary Plan.
>
> [(2)] In or around October 1996, Gerald C. Strouse, the prior owner of the Pineda Property, affirmatively abandoned/released/relinquished any alleged right of way or

---

[2] The Dillon Deed was attached to The Bradys' Answer to Complaint with New Matter and Counterclaim as Exhibit "1."

easement over the Brady Property by stating that he was not going to use said area of land and thereafter by placing a fence in the Pineda Property adjacent to Coates Alley.

*Id.* at ¶ 9. Additionally, the Bradys made a counterclaim requesting that the trial court "quiet title to the Brady Property and declare that the Brady Property is not encumbered by an easement or right of way in favor of the Pineda Property over Coates Alley or otherwise over the Brady Property." *Id.* at ¶ 58.

Pineda also alleges that, subsequent to his purchase of the Pineda Property, the Perrys erected a six foot high, ten foot wide fence across Coates Alley which blocks his access to the Pineda Property from the direction of King Alley and expanded the use of their property through fencing and grading in order to limit the original size of King Alley, from twenty feet to twelve feet. Complaint, 5/13/2019, at ¶¶ 14-15. According to the Perrys, the fence across King Alley has been in place and maintained by themselves and their predecessors "for a period of time in excess of twenty-one (21) years." The Perrys' Answer to Complaint, 6/7/2019, at ¶ 14.

On July 8, 2019, the trial court held a hearing on the Petition. After reviewing the pleadings and listening to argument, the trial court stated that it did not believe that the issue before it required witness testimony but would be decided on the law. N.T. at 36.

Following the submission of post-trial briefs, the trial court entered the following order:

> **AND NOW**, this 1th day of Nov, 2019, upon consideration of Plaintiff, Alex Anthony Pineda, Jr.'s Petition for Preliminary and Permanent Injunction, and the response thereto, and after hearing held thereon, it is hereby **ORDERED** that this Petition is **GRANTED**.
>
> Defendants, James L. Perry, Andrea Perry, G. Philip Brady, Deborah Anne Brady, Roxanne Roberto and Sharon Perry are permanently enjoined from denying Plaintiff access to the rear of his property located at 433 Church Street, King of Prussia, PA 19406.
>
> Any and all structures which currently block Plaintiff's access to the property located at 433 Church Street, King of Prussia, PA 19406 shall be removed within twenty (20) days of the date of the docketing of this Order

Order, 11/15/2019. The Bradys and the Perrys did not file post-trial motions.

> The Brady[s] filed a Notice of Appeal of this Order on November 25, 2019 and the Perry[s] filed a Notice of Appeal on November 26, 2019.
>
> On December 3, 2019, a day before the period for the removal of the fence was to expire, both the Perry[s] and the Brady[s] filed motions to stay this order, and sent a letter to the court asking that these motions be decided quickly because their time to comply with the order was expiring. The court denied these motions on . . . December 4, 2019 but also on that date entered an Amended Order[.]

Trial Court Opinion, dated December 20, 2019, at 3-4. The amended order was identical to the original order, except stating that any structures blocking access "shall be removed within ten (10) days of the date of the docketing of this Amended Order. Plaintiff shall post bond in the amount of $500 within five (5) days of the docketing of this Amended Order." Amended Order, 12/4/2019. The Bradys and the Perrys (hereinafter collectively "Appellants") also filed notices of appeal from the amended order. The trial court did not

- 7 -

issue a Pa.R.A.P. 1925(b) order directing Appellants to file a concise statement of errors complained of on appeal.

On December 12, 2019, Appellants filed a "Joint Emergency Application for Stay and Suspension of Permanent Injunction Pending Appeal." On December 13, 2019, this Court temporarily granted the stay, pending Pineda's answer to the application, and consolidated these appeals. After Pineda filed his answer, this Court granted the stay for the duration of the appeal.

As no post-trial motions were filed and no formal judgment entered, we must first consider whether this Court has jurisdiction to address this matter. On August 10, 2020, this Court issued a *per curiam* order directing Appellants

> to show cause within ten (10) days of the date of this order as to why the issues that they seek to raise on appeal are not waived for failure to file post-trial motions within ten (10) days following the entry of the trial court's order or amended order pursuant to [Pennsylvania Rule of Civil Procedure] 227.1, including but not limited to the applicability of the exception contained in Pa.R.A.P. 311(a)(4)(ii). . . . Failure to respond to this directive may result in quashal/dismissal of this appeal without further notice.

Appellants filed a response on August 19, 2020.

Appeals arising from a trial court's grant of injunctive relief is controlled by Pa.R.A.P. 311, which states, in relevant part:

> **(a) General rule.**--An appeal may be taken as of right . . . from:
>
>> *(4) Injunctions.*--An order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction unless the order was entered: . . .
>>
>>> (ii) After a trial but before entry of the final order. **Such order is immediately appealable, however, if the order enjoins conduct previously**

- 8 -

> **permitted or mandated or permits or mandates conduct not previously mandated or permitted, and is effective before entry of the final order.**

Pa.R.A.P. 311(a)(4)(ii) (emphasis added). This Court has interpreted Pa.R.A.P. 311(a)(4)(ii) as follows:

> Generally, it is improper to file a motion for posttrial relief when appealing pursuant to Rule 311. . . . [A]n appeal may be taken from an order that (because a final judgment has not yet been entered) is not otherwise appealable under Rule 311(a)(4)(ii) if (1) the order enjoins conduct previously allowed or allows conduct previously prohibited, and (2) the injunction takes effect before entry of a final judgment.

*SBA Towers II LLC v. Wireless Holdings, LLC*, ___ A.3d ___, 2020 PA Super 86, *10 (filed April 6, 2020) (*en banc*) (internal citations and quotation marks omitted) (some additional formatting), *reargument dismissed* (April 23, 2020).

The facts and procedural history of the current action are analogous to those of the recent cases, *SBA Towers*, *id.*, and *Guiser v. Sieber*, ___ A.3d ___, 2020 PA Super 182 (filed August 5, 2020). In *SBA Towers*, 2020 PA Super 86 at *10-*11:

> [F]inal judgment was not entered. However, the trial court's permanent injunction took immediate effect, and allowed conduct that was prohibited under the preliminary injunction — namely, that Wireless Holdings could impose conditions affecting Appellant's access to the property. Accordingly, pursuant to Pa.R.A.P. 311(a)(4)(ii), . . . we conclude that this appeal is properly before us.

The procedural posture of the current action parallels that of *SBA Towers*, as final judgment was not entered prior to the current appeal, yet the trial court's permanent injunction took immediate effect and prohibited conduct that was

previously allowed. ***Compare id. with*** Trial Court Opinion, dated December 20, 2019, at 3. Accordingly, pursuant **SBA Towers**' application of Pa.R.A.P. 311(a)(4)(ii), we must also find that the current appeal is properly before us. **SBA Towers**, 2020 PA Super 86 at *11.

In **Guiser**, 2020 PA Super 182 at *8-*9, this Court likewise wrote:

> Appellants blocked access to Woods Road for several years before the instant action. . . [T]here was no indication in the record that Appellants stopped blocking access to Woods Road during the pendency of the litigation of this matter. . . . [A]fter the nonjury trial, but before the entry of judgment, the trial court issued an injunction that changed the status quo and prohibited Appellants from blocking Woods Road. . . . Under these circumstances, we are constrained to conclude that an appeal from the trial court's decision to grant an injunction is properly before this Court under Pa.R.A.P. 311(a)(4)(ii) . . . Therefore, we will address Appellants' arguments to the extent that they relate to the injunction prohibiting Appellants from blocking Appellees' access to Woods Road.

Similarly, Appellants blocked access to Coates Alley and King Alley for several years, and there is no indication in the record that Appellants stopped blocking access to either Coates Alley or King Alley during the pendency of the litigation in this matter. ***Compare id. with*** Trial Court Opinion, dated December 20, 2019, at 2. After a hearing but before entry of final judgment, the trial court issued an injunction that changed the status quo and prohibited Appellants from blocking either alley. ***Compare Guiser***, 2020 PA Super 182 at *8, ***with*** Trial Court Opinion, dated December 20, 2019, at 3. According to **Guiser**, 2020 PA Super 182 *9, we also must conclude that the current appeal from the trial court's decision to grant an injunction is properly before us under to

Pa.R.A.P. 311(a)(4)(ii). Consequently, pursuant to **SBA Towers**, 2020 PA Super 86 at *10-*11, and **Guiser**, 2020 PA Super 182 at *8-*9, we will address Appellants' appellate claims.

Appellants have filed a joint appellate brief and present the following issues for our review:

> [A.]   Whether the trial court's Order and Amended Order should be reversed where Mr. Pineda did not establish that he was entitled to injunctive relief as a matter of law because: (i) collateral estoppel does not apply to bar [Appellants'] defenses in this action or the Bradys' Counterclaims and (ii) in granting the injunction the trial court disregarded Pennsylvania law providing that easements can be extinguished/terminated?
>
> B.   Whether the trial court's Order and Amended Order granting injunctive relief should be reversed because granting such relief without conducting an evidentiary hearing, without requiring Mr. Pineda to establish a clear right to such relief and without permitting [Appellants] (hereinafter defined) to introduce evidence or cross-examine Mr. Pineda was an abuse of discretion and an error of law where:   (i) it constitutes a denial of [Appellants'] due process rights and amounts to a taking of their property; (ii) the granting of permanent injunctive relief was premature given the procedural process of the case; (iii) with respect to the entry of a permanent injunction, [Appellants] did not agree to treat the "hearing" as a final hearing on the merits?
>
> [C.]   Whether the trial court's Order and Amended Order granting injunctive relief to Mr. Pineda (hereinafter defined) should be reversed where the trial court lacked subject matter jurisdiction over the action due to Mr. Pineda's failure to join indispensable parties and those required to be joined under the Declaratory Judgment Act?

Appellants' Brief at 4-5 (issues reordered to facilitate disposition) (trial court's answers omitted).

"We first recite the law regarding appellate review:  The grant or denial of a permanent injunction is a question of law.  Regarding the trial court's

- 11 -

legal determination, our standard of review is *de novo*, and our scope of review is plenary." **SBA Towers**, 2020 PA Super 86 at *12 (citation and internal quotation marks omitted).

According to Appellants, "the order and amended order should be reversed because the trial court erred in finding that Mr. Pineda was entitled to injunctive relief as a matter of law." Appellants' Brief at 35. Appellants allege that "the trial court disregarded Pennsylvania law providing that easements can be extinguished or terminated . . . by adverse possession, merger and abandonment." *Id.* at 36, 39 (citation omitted).

"[W]hen lots are sold as part of a recorded subdivision plan on which a street has been plotted by the grantor, the purchasers acquire property rights in the use of the street." **Starling v. Lake Meade Property Owners Association, Inc.** ("**Starling II**"), 162 A.3d 327, 337–38 (Pa. 2017) (citations and internal quotation marks omitted). "Specifically, all purchasers of property in a subdivision acquire an easement over all platted roads in the subdivision plan." **Starling v. Lake Meade Property Owners Association, Inc.** ("**Starling I**"), 121 A.3d 1021, 1028 (Pa. Super. 2015), *rev'd on other grounds*, **Starling II**, 162 A.3d 327. "This 'easement of access' is a property right appurtenant to the land [that] cannot be impaired or taken away without compensation." **Starling II**, 162 A.3d at 338; **see also Potis v. Coon**, 496 A.2d 1188, 1193 (Pa. Super. 1985) ("It is well settled that the grantee of a lot, which is sold according to a plan of lots on which streets or alleys not previously opened or projected as a public street are plotted out by the

grantor, acquires an easement over those streets and alleys as a private right of property arising out of the grant, of which he cannot be deprived without compensation.").

In the current action, lots were sold as part of a recorded subdivision plan — the O'Leary Plan – on which streets, including Coates Alley and King Alley, had been plotted by the grantor, Stephen O'Leary. Accordingly, pursuant to **Starling II**, 162 A.3d at 337–38, all purchasers of those subdivision lots, including Lot 2 in Section D, acquired property rights in the use of those streets, *i.e.*, Coates Alley and King Alley. These "easements of access" cannot be impaired or taken away without compensation. There is no evidence nor argument that Pineda, as owner of Lot 2 in Section D, a/k/a the Pineda Property, was ever compensated for the preclusion of his use of Coates Alley or King Alley, and, thus, pursuant to **Starling II**, **id.** at 338, and **Potis**, 496 A.2d at 1193, these easements of access should not have been impaired nor taken away from him.

Additionally,

[i]t is beyond cavil in Pennsylvania that a property owner may use his property only in ways that do not interfere with the rights of the easement holder. **See Minard Run Oil Co. v. Pennzoil Co.**, 419 Pa. 334, 214 A.2d 234, 235 (1965) ("The owner of the servient tenement may make any use thereof which is consistent with or not calculated to interfere with the exercise of the easement." (citation omitted)); **Mercantile Library Co. of Phila. v. Fid. Trust Co.**, 235 Pa. 5, 83 A. 592, 595 (1912) ("The grant of a fee, subject to an easement, carries with it the right to make any use of the servient soil that does not interfere with the easement ...." (citation omitted)).

- 13 -

***Starling II***, 162 A.3d at 343. Where "all owners in [a s]ubdivision h[o]ld an access easement to the roads, it necessarily followed that no . . . owner . . . could[, for example,] permit houses to be built upon it, designate it as a parking lot, or otherwise **prevent access by ... property owners to their lots**[.]" ***Id.*** (emphasis added) (citation and internal quotation marks omitted).

Consequently, although all property owners in the subdivision laid out by the O'Leary Plan have easements of access to all of the streets plotted on said plan, none of those property owners may interfere with the rights of the other property owners as easement holders. ***Id.*** Ergo, under ***Starling II***, ***id.***, Appellants cannot prevent access by other property owners to their lots, including access by Pineda to the Pineda Property, and, hence, the trial court properly granted injunctive relief ordering Appellants to remove all impediments preventing Pineda from accessing the Pineda Property or stopping any other purchaser of property in the subdivision plotted in the O'Leary Plan from using their easement over Coates Alley and King Alley.

The law articulated on this point in ***Starling I***, ***Starling II***, and ***Potis*** was the same as at the time of the 1968 litigation, hence the consistent result. ***See*** Trial Court Opinion, dated December 20, 2019, at 3 (citing ***Zoltowski v. Roberto***, MCCP 68-6542, Order dated April 2, 1969, attached as Exhibit G to Pineda's Petition for Preliminary and Permanent Injunction); ***Starling II***, 162 A.3d at 343 (citing ***Minard Run***, 214 A.2d at 235 (1965); ***Mercantile Library***, 83 A. at 595 (1912)); ***see also Chambersburg Shoe***

- 14 -

*Manufacturing Co. v. Cumberland Valley Railroad Co.*, 87 A. 968, 970 (Pa. 1913) ("an owner, where the street has been laid out or established by his grantor, is a purchaser by implied covenant of the right that the street shall remain open"; "Such a right is sometimes called an 'easement of access' which means the right of ingress and egress to and from the premises of the lot owners. It is a property right appurtenant to the land which cannot be impaired or taken away without compensation.").

As for Appellants' arguments that an easement may be lost by abandonment, adverse possession, and/or merger, Appellants' Brief at 36, 39; The Bradys' Answer to Complaint with New Matter and Counterclaim, 6/17/2019, at ¶¶ 9, 16; The Perrys' Answer to Complaint, 6/7/2019, at ¶ 14, Appellants conflate the law concerning the grant of a private easement with an easement of access bestowed as a property right of all property owners within a subdivision. Appellants present us with no case law – and our research has failed to uncover any – where easements of access belonging to all property owners in a subdivision can be lost by any one of those property owners through abandonment, adverse possession, and/or merger. **See** Appellants' Brief at 35-43.

Concerning the Bradys' counterclaim, **see** The Bradys' Answer to Complaint with New Matter and Counterclaim, 6/17/2019, at ¶ 58, we note that the Bradys chose to file an interlocutory appeal prior to entry of final judgment. Subsequent to the resolution of this appeal, the Bradys may still pursue their counterclaim with the trial court.

Furthermore, as all facts necessary to resolve the substantive question of whether Appellants were permitted to block Pineda's access to the rear of the Pineda Property via Coates Alley and King Alley were established by the existing record and were not in dispute, we disagree with Appellants' allegation that "the trial court's order and amended order must be reversed because the entry of such orders without an evidentiary hearing and at the early stage of the proceedings violated [Appellants'] due process rights and was procedurally improper." Appellants' Brief at 28. The only facts in dispute related to Appellants' proposed defenses of abandonment, adverse possession, and merger, and, as noted above, these defenses are inapplicable in this case. *Compare* Complaint, 5/13/2019, at ¶¶ 13-16, *with* The Bradys' Answer to Complaint with New Matter and Counterclaim, 6/17/2019, at ¶¶ 9, 16, *and* The Perrys' Answer to Complaint, 6/7/2019, at ¶ 14. Thus, no additional evidence was necessary. Moreover, Appellants were heard at a hearing on the petition before the trial court, where the parties made their respective arguments, which were augmented with post-trial briefs. Trial Court Opinion, dated December 20, 2019, at 3. Therefore, the trial court did not err by choosing not to hold an evidentiary hearing, which would have been a waste of judicial resources, and, accordingly, Appellant were not denied due process.

Finally, we note that this decision only affects the use of Coates Alley and King Alley by owners of lots within the subdivision plotted in the O'Leary Plan. The trial court's order was limited to permanently enjoining Roberto and

Appellants – who were all specifically named – "from denying [Pineda] access to the rear of" the Pineda Property. Order, 11/15/2019; Amended Order 12/4/2019. There is no mention in the order of the propriety of the use of Coates Alley or King Alley by individuals who do not own property within that subdivision, and we likewise make no such determination. Thus, this holding has no bearing on the rights of the Kerwins, whose property rests outside said subdivision. For this reason, and contrary to Appellants' contention, Appellants' Brief at 24-25, 27, the Kerwins are not indispensable parties to this case, and the trial court's jurisdiction over this matter was not affected by the non-joinder of the Kerwins thereto. ***See Guiser***, 2020 PA Super 182 at *15 ("[t]he failure to join an indispensable party is a non-waivable defect that implicates the trial court's subject matter jurisdiction").

Based on the foregoing, Appellants are not entitled to relief and we affirm the order and amended order granting injunctive relief in favor of Pineda. As a result, we lift the stay and suspension of the permanent injunction and order Appellants to satisfy the injunction by removing any and all structures currently blocking access to the Pineda Property within 30 days of the date of this decision.

Order affirmed. Stay and suspension of permanent injunction lifted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/24/20</u>